Beatrice McCullough, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued October 10, 1980, before Judges ROGERS, MACPHAIL and PALLADINO, sitting as a panel of three.

*James M. Lafferty,* for petitioner.

*Mary Frances Grabowski,* Assistant Attorney General, for respondent.

OPINION BY JUDGE MACPHAIL, January 19, 1981:

Beatrice McCullough (Petitioner) has appealed from the final administrative action of the Department of Public Welfare (Department) sustaining the denial by the Philadelphia County Board of Assistance of her application for emergency shelter assistance. We reverse and remand.

Petitioner, her husband and child received public assistance prior to November 4, 1977 when her husband obtained a job. All public assistance for the family ended effective December 6, 1977. Sometime

during December of 1977 Petitioner's husband left her and their child. Petitioner was also pregnant at the time and was forced to reapply for public assistance which she began receiving on January 25, 1978 in the amount of $302.00 per month.[1]

There is evidence in the record that Petitioner had difficulty paying her rent and electric bills after her husband's departure from the home. Despite these financial difficulties Petitioner did not apply to her County Assistance Office for emergency shelter assistance until February, 1979. At that time she apparently was three months in arrears on her rent payments.[2] The application was denied because, according to the County Board, Petitioner failed to demonstrate that her inability to pay her rent was due to an "emergency" as required by Department regulations. Petitioner appealed this decision and, after a fair hearing, the Department affirmed.

The issue presented for our consideration is whether Petitioner is entitled to emergency shelter assistance.

---

[1] Petitioner apparently received assistance for herself, her living child and her unborn child beginning on January 25. Her second child was born on March 20, 1978.

[2] The hearing examiner found that the rent arrearages were for December, 1978, January and February, 1979. The only testimony in the record with respect to the specific months for which arrearages existed was a statement made by a paralegal, who apparently acted in a representative capacity for Petitioner at the hearing, and a statement by an unidentified person who related a telephone conversation with Petitioner's apartment manger. Neither statement constituted competent evidence and could not be relied upon to support the hearing examiner's conclusion. We have no evidence that the paralegal was under oath or acting as a witness for Petitioner and the statement relating the telephone conversation was uncorroborated hearsay. Due to testimony by Petitioner discussed *infra* we nevertheless are satisfied that arrearages did exist.

Our scope of review of final orders of the Department is limited to a determination of whether the adjudication was in accordance with law, whether constitutional rights were violated and whether the findings of fact were supported by substantial evidence. *Burks v. Department of Public Welfare,* 48 Pa. Commonwealth Ct. 6, 408 A.2d 912 (1979).

Department regulations provide that total shelter costs may be authorized for eligible families or individuals

> [t]o prevent eviction or foreclosure as the result of an emergency. . . . Nonpayment of rent resulting in eviction is not in itself an emergency. The nonpayment of rent must have been caused by unexpected circumstances over which the client had no control. Clients who are being evicted or foreclosed because of money mismanagement will be offered social services, not emergency assistance.

55 Pa. Code §289.4(a)(2)(iii)(A). An ''emergency'' is defined as: ''Sudden unexpected circumstances creating a breakdown of individual or family functioning in meeting basic family needs and resulting in a need for immediate action to avoid destitution of the individual or minor children residing in the family unit.'' 55 Pa. Code §289.2.

We consider our decision in this case to be controlled by *Slaughter v. Department of Public Welfare,* 46 Pa. Commonwealth Ct. 463, 406 A.2d 846 (1979). In that case an application for emergency shelter assistance was filed by Ms. Slaughter who was threatened with foreclosure on her home mortgage. Ms. Slaughter was forced to leave work due to illness in October, 1977 and by late February, 1978 was in need of emergency assistance. The County Board found that the threatened foreclosure was due

to money mismanagement and not an "emergency" as defined by Department regulations. This Court reversed, ruling that Ms. Slaughter's loss of employment was a "sudden unexpected circumstance [    ]", as required by 55 Pa. Code §289.2, "from which all else flowed, including the threatened loss of her home." *Id.* at 466, 406 A.2d at 847. Therefore, the threatened foreclosure was the result of an "emergency" and assistance was ordered. Thus, mere passage of time between the "sudden unexpected circumstances" and the actual request for assistance need not preclude a finding that an "emergency" exists.

In the instant case we believe that the fact Petitioner's husband left her in December, 1977 was the "sudden unexpected circumstance [    ]" from which her mounting financial difficulties "flowed." While the record is confusing and contains many "inaudibles" which make review difficult and which we look upon with considerable disfavor, we are convinced that Petitioner's present predicament, though distant in time, is a result of her husband's departure from the home. Petitioner's own testimony demonstrates that she had difficulty paying her rent and electric bills. Specifically, she testified that her rent payment for March was not made until April and that it was difficult to "get caught up." This testimony corroborates that given by a representative of the County Assistance Office who, apparently reading from an unidentified sheet of paper, testified that Petitioner's rent payments for January, May and June were also late. While this latter testimony was clearly hearsay, it was admitted without objection and was corroborated by competent evidence. It, therefore, may be used to support a finding with respect to Petitioner's financial difficulties. *See Burks,*

*supra.* Petitioner also testified that because her husband had not been paying the electric bills when he left her, she was paying $50.00 per month until the back bills were paid.[3] Finally, Petitioner testified at the hearing held on May 3, 1979 that if she did not pay the back rent due "they were going to lock [her] out."

From this evidence we conclude that the threatened eviction of Petitioner and her children from their apartment is the result of an "emergency" as defined by the Department. Any other conclusion would work an injustice by penalizing a person, like the Petitioner, who attempts to make ends meet after the occurrence of "sudden unexpected circumstances" but who ultimately fails. The Department's decision is, therefore, reversed.

One final matter for our consideration involves the following language contained in Department regulations: "Payments may only be authorized if such payments will prevent eviction or foreclosure. Necessary documentation to substantiate that the payment will prevent eviction or foreclosure is required prior to any authorization." 55 Pa. Code §289.4(a)(2)(iii) (A). We note that no such documentation is of record in the instant case. Petitioner, in fact, testified at the hearing that she was then repaying portions of her back rent under an agreement, the nature of which was also not of record. In light of the unambiguous mandate contained in the regulation we must remand for the authorization of emergency shelter assistance unless Petitioner fails to provide adequate documentation that the assistance will prevent eviction.

---

[3] Petitioner was apparently still paying this amount for electricity at the time of the fair hearing held on May 3, 1979. It is unclear from the record whether these payments were in addition to or included her regular monthly electric bill.

ORDER

AND Now, this 19th day of January, 1981, the order of the Department of Public Welfare No. 1029 334 C, dated August 3, 1979 is hereby reversed and remanded to the Department of Public Welfare for proceedings consistent with the foregoing opinion.

